UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

CURTIS EDWARD JACKSON,

                    Petitioner,

        v.

WARDEN CARLIN,

                    Respondent.

Case No. 3:18-cv-00376-REP

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho prisoner Curtis Edward Jackson ("Petitioner" or "Jackson"), challenging Petitioner's Bonner County convictions on three counts of lewd conduct with a minor under sixteen. *Pet*., Dkt. 3. The Court previously dismissed Claim 4 as noncognizable and Claims 1(b), 1(c), 4, and 6 as procedurally defaulted. *See Memo. Dec. and Order*, Dkt. 21 (Jan. 13, 2020). The merits of the remaining claims are now fully briefed and ripe for adjudication. The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent at Docket No. 12. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. 8. Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is

MEMORANDUM DECISION AND ORDER - 1

unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court will enter the following Order denying habeas corpus relief.

## BACKGROUND

In the First Judicial District Court in Bonner County, Idaho, Petitioner was charged with three counts of lewd conduct based on allegations that he molested the nine-year-old daughter of family friends. The first trial ended in a mistrial, and Petitioner was retried.

The victim testified that Petitioner molested her three times that she could remember. She described one offense that occurred in Petitioner's truck, one that occurred outside her house, and one that occurred in her bedroom. *State's Lodging A-2* at 228–44.

The victim's older sister witnessed the aftermath of the bedroom incident—she came up the stairs and saw the victim pulling up her pants in her bedroom. *Id.* at 196. Petitioner then caught the sister in a hug and whispered in her ear, "You didn't see anything." *Id.* at 197. After Petitioner left, the victim disclosed the molestation to her sister and discussed what had happened. *Id.* at 198–200, 238. The sister then told the victim's mother, the mother and sister spoke with the victim together, and the mother later reported the incident to police. *Id.* at 167–74, 252–55, 238–59.

Petitioner denied the molestation. As for the bedroom incident, Petitioner testified that the victim had exposed herself to him and he told her several times to pull her pants up. *Id.* at 323. Petitioner acknowledged that the victim's sister saw the victim pulling up

her pants. He also acknowledged speaking the phrase, "You didn't see anything," while hugging the sister, but he claimed it was a question rather than a statement or command. *Id*. at 324. Petitioner said he asked this question because he "didn't want any of this to go any further" and "didn't want anybody else to be hurt by a misinterpretation of a certain short event." *Id*.

The jury found Petitioner guilty on all counts. Petitioner was sentenced to unified concurrent terms of life in prison with fifteen years fixed. *State's Lodging D-9* at 1–2. Petitioner filed a Rule 35 motion for reduction of sentence, which the trial court denied. *State's Lodging B-4* at 1. The Idaho Court of Appeals affirmed the convictions and sentences, and the Idaho Supreme Court denied review. *State's Lodging B-4, B-7*.

Petitioner also pursued post-conviction relief, asserting several claims of ineffective assistance of counsel. *State's Lodging C-1* at 4–22. The state district court dismissed the petition, and that dismissal was upheld on appeal. *Id*. at 83–89; *State's Lodging D-9, D-12*.

Petitioner filed the instant Petition in August 2018. Claims 1(a), 2, 3, and 5 of the Petition remain for adjudication on the merits. Because the resolution of Claim 5 informs the resolution of some of Petitioner's other claims, the Court will address Petitioner's claims out of numerical order.

Claim 5 asserts that the trial court improperly denied Petitioner's motion to excuse Juror 34 for cause, which required Petitioner to use a peremptory challenge to remove Juror 34 and, thus, resulted in two biased jurors (Jurors 54 and 57) remaining on the jury.

Petitioner also argues in Claim 5 that the trial court should have excused Jurors 54 and 57 sua sponte—meaning on its own motion, without a request by either party.

In Claim 3, Petitioner contends that counsel rendered ineffective assistance by (a) failing to preserve Claim 5 for appeal, and (b) failing to move to excuse Jurors 54 and 57 for cause.

Claim 2 asserts that trial counsel rendered ineffective assistance by failing to move for a change of venue based on pretrial publicity surrounding the case.

Finally, Claim 1(a) alleges that trial counsel rendered ineffective assistance by failing to conduct an adequate pretrial investigation, particularly with respect to the credibility of the victim. *See Pet.* at 4–26; *Memo. Dec. and Order*, Dkt. 21, at 3–4.

## HABEAS CORPUS STANDARD OF LAW

A federal court may grant habeas corpus relief when it determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The term "unreasonable" in § 2254(d) is reserved for "extreme malfunctions in the state criminal justice system," not for "ordinary error" or even for cases "where the petitioner offers a strong case for relief." *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (per curiam) (internal quotation marks omitted). Accordingly, a federal court reviewing a state court's adjudication of a claim on the merits "must carefully consider all the reasons and evidence supporting the state court's decision." *Id.* Courts are not permitted "to essentially evaluate the merits *de novo* by omitting inconvenient details from its analysis." *Id.* (internal quotation marks omitted). Instead, "[d]eciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal quotation marks and citations omitted).

Deference is required under § 2254(d) even if the highest state court denied the petitioner's claim without expressly addressing it. In such a case, the Court must "'look through' the unexplained decision to the last related state-court decision that ... provide[s] a relevant rationale." *Id.* at 1192. The Court then presumes that "the unexplained decision adopted the same reasoning," though this presumption can be rebutted. *Id.*

If there is no reasoning provided by any state court, the Court presumes that the state court adjudicated all fairly-presented claims on the merits unless there is some

"indication or state-law procedural principle[] to the contrary." *Harrington v. Richter*,
562 U.S. 86, 99 (2011). This presumption also applies if a state court addresses some, but
not all, of a petitioner's claims. *Johnson v. Williams*, 568 U.S. 289, 298 (2013). When a
court applies the presumption, it must "conduct an independent review of the record to
determine what arguments or theories could have supported the state court's decision";
the court must then determine whether fair-minded jurists "could disagree that those
arguments or theories are inconsistent with the holding in a decision of the Supreme
Court." *Bemore v. Chappell*, 788 F.3d 1151, 1161 (9th Cir. 2015) (internal quotation
marks and alterations omitted); *see also Rowland v. Chappell*, 876 F.3d 1174, 1181 (9th
Cir. 2017) ("Independent review of the record is not de novo review of the constitutional
issue, but rather, the only method by which we can determine whether a silent state court
decision is objectively unreasonable." (internal quotation marks and citation omitted)). A
summary decision of a state court is entitled to "meaningful deference," and a federal
court must "consider reasonable grounds that could have supported" that decision. *Sexton
v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (per curiam).

When a party contests the state court's legal conclusions, including application of
the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:
the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established
federal law "if the state court applies a rule different from the governing law set forth in
[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014) (emphasis omitted).

Under AEDPA, a federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). Rather, the state court's application of federal law must be objectively unreasonable to warrant relief. If there is *any* possibility that fair-minded jurists could disagree on the correctness of the state court's decision, § 2254(d)(1) precludes relief. *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013).

"Clearly established federal law" means the governing legal principles set forth in the holdings—not the dicta—of the United States Supreme Court, as of the time the state court rendered its decision. *Williams*, 529 U.S. at 412. The habeas statute does not require an identical factual pattern before a legal rule must be applied. To the contrary, state courts must reasonably apply the rules squarely established by the Supreme Court's holdings to the facts of each case. *See White*, 572 U.S. at 427.

On the other hand, if a court must *extend* a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state court's decision. *Id.* at 407. A federal habeas court "may not overrule a state court for … holding a view different from its own" when the precedent from the Supreme Court "is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). Although circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent, *Duhaime v. Ducharme*, 200 F.3d 597, 600–01 (9th Cir. 2000), a federal court may not refine or sharpen a general principle of Supreme Court habeas corpus jurisprudence into a specific legal rule that the Court itself has not announced, *Lopez v. Smith*, 574 U.S. 1, 7 (2014).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, evidence that was not presented to the state court cannot be introduced on federal habeas review if (1) a claim was adjudicated on the merits in state court and (2) the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014) ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the

claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Instead, state court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Kirkpatrick v. Chappell*, 926 F.3d 1157, 1170 (9th Cir. 2019) (holding that § 2254(e)(1) "appears to apply to all factual determinations made by state courts"). "If reasonable minds reviewing the record might disagree about the finding in question," a petitioner cannot obtain habeas relief under § 2254(d)(2). *Pizzuto v. Yordy*, 947 F.3d 510, 530 (9th Cir. 2019) (internal quotation marks and alterations omitted).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to or an unreasonable application of Supreme Court precedent under subsection (d)(1), or by establishing that the state court's factual

findings were unreasonable under subsection (d)(2)—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778. When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle v. Morgan*, 313 F.3d 1160, 1167–68 (9th Cir. 2002); *Kirkpatrick*, 926 F.3d at 1170 ("Unlike § 2254(d), § 2254(e)(1)'s application is not limited to claims adjudicated on the merits [by a state court]."). Conversely, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *See Murray*, 745 F.3d at 1000.

## DISCUSSION

For the reasons that follow, the Court will deny Petitioner's remaining habeas claims.

## 1.     Petitioner Is Not Entitled to Habeas Relief on Claim 5

In Claim 5, Petitioner asserts that his right to an impartial jury was violated when the trial court denied Petitioner's motion to excuse Juror 34 for cause, requiring Petitioner to use a peremptory challenge to remove her; as a result, Petitioner was unable to use a

peremptory challenge to remove Juror 54 or Juror 57—jurors who also were allegedly

biased and who ended up sitting on the jury. Claim 5 also asserts that the trial

court should have, sua sponte, removed Jurors 54 and 57 for cause.

### A.    *Clearly Established Law*

The Sixth and Fourteenth Amendments guarantee every criminal defendant the

right to an impartial jury. *See Ross v. Oklahoma*, 487 U.S. 81, 85 (1988). The

constitutional standard for juror impartiality is whether the juror "can lay aside his

impression or opinion and render a verdict based on the evidence presented in court."

*Irvin v. Dowd*, 366 U.S. 717, 723 (1961). Jurors are presumed impartial, and "the mere

existence of any preconceived notion as to the guilt or innocence of the accused" is

insufficient to rebut that presumption. *Id*.

To qualify as impartial, jurors need not "be totally ignorant of the facts and issues

involved." *Murphy v. Florida*, 421 U.S. 794, 799–800 (1975). However, a juror should be

excused for cause if a particular belief will "prevent or substantially impair the

performance of his duties as a juror in accordance with his instructions and his

oath." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985).

A judge's findings on whether a potential juror should be removed for cause are—

like all state court factual findings in the habeas context—presumed correct absent clear

and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Smith v. Phillips*, 455

U.S. 209, 218 (1982). A federal court's review of such findings must be deferential

because the trial judge "is in a position to assess the demeanor of the [prospective jurors],

a factor of critical importance in assessing the attitude and qualifications of potential jurors." *Uttecht v. Brown*, 551 U.S. 1, 9 (2007).

If a trial court declines to remove a juror for cause, and the defense then exercises a peremptory challenge to excuse the juror, the defendant cannot later obtain habeas relief merely by showing that the removed juror was biased. *Ross*, 487 U.S. at 86. Instead, a habeas petitioner must also show that at least one of the "jurors who ultimately sat" on the trial jury was biased:

> We have long recognized that peremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. *So long as the jury that sits is impartial*, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.

*Id*. at 85, 88 (emphasis omitted) (internal citations omitted).

### B.    *Factual Basis of Claim 5*

The impartiality of one potential juror (Juror 34) and two actual jurors (Jurors 54 and 57) are at issue in this case. A description of the relevant testimony given during jury selection follows.

During voir dire, defense counsel asked, "Is there anyone here who feels that since this is a nine year old girl it's probably true or we wouldn't be here?" Juror 34 nodded her head. *State's Lodging A-2* at 105. Defense counsel then elicited the following information from Juror 34:

> [Q.] Do you think you could put aside that bias and be a fair and impartial juror or would you believe the little girl?
>
> A. I guess it would depend on the evidence.

MEMORANDUM DECISION AND ORDER - 12

[Q.] Okay. If it just gets down to the two of 'em?

…

A. I think with the nature of this case if it's purely his word
against hers and that's it, then I would—yeah, I would believe
the little girl over a grown man.

*Id*. at 107–08. Juror 34 also stated that, from her perspective, "most of these [types of]

allegations are true." *Id*. at 99.

Defense counsel continued:

[Q.] Okay. And … let's say I don't put on any evidence at all
and it seems reasonable, would you find my client guilty
based on it seems reasonable? How about it's plausible?

A. It would have to be more than plausible.

[Q.] How about believable?

A. I don't know. I guess that's all semantics. It's supposed to
be beyond a reasonable doubt.

[Q.] Supposed to be.

A. Yeah.

[Q.] Will you hold yourself to that standard?

A. Yeah. I think so. Yeah.

[Q.] Okay. Well, let me ask one last question. If you were
afraid he did this but you don't think they proved it, would
you find him guilty anyway?

A. I guess I would have a hard time if I felt like the
prosecution, you know, didn't.

[Q.] And then maybe your job would be to make up the
difference.

A. Put forth enough.

> [Q.] So basically the answer would be yes.
>
> A. Yeah.
>
> [Q.] If they gave you enough to hang your hat on, even if they didn't really prove beyond a reasonable doubt, just to make sure, just to make sure, that he doesn't get away with it.
>
> A. Yeah. I—you know just because of the nature of this case.

*Id*. at 128–29.

The prosecutor then engaged in the following colloquy with Juror 34:

> [Q.] But you do understand that I have the burden. I have to show that he's guilty.
>
> A. Right.
>
> [Q.] And if I don't do that, you have to vote not guilty.
>
> A. Right.
>
> [Q.] that's your duty.
>
> A. (Juror nods head affirmatively.)
>
> [Q.] Right?
>
> A. Right.
>
> [Q.] And you can do that.
>
> A. Yes.
>
> [Q.] Thank you. Do you feel like you could be fair and impartial in this case if it came down to a close question?
>
> A. Yes.

*Id*. at 131–32.

MEMORANDUM DECISION AND ORDER - 14

The trial court denied Petitioner's motion to remove Juror 34 for cause. Defense counsel excused her with a peremptory challenge, and Juror 34 did not sit on Petitioner's jury. *Id*. at 141.

Also during jury selection, the prosecutor stated that he was acquainted with Juror 54's husband and son and that the prosecutor knew the juror herself "just a little bit." *Id*. at 77. The prosecutor asked Juror 54 whether that acquaintance would "sway" her "in any sense," and she responded, "It might." *Id*. However, after a follow-up question, Juror 54 testified that she "could be fair" both to Petitioner and to the prosecutor. *Id*. Petitioner did not move to remove Juror 54 for cause and did not exercise a peremptory challenge, and the trial court did not excuse the juror sua sponte.

Juror 57 initially stated that she could be a fair and impartial juror. *Id*. at 68, 70. However, she then expressed a concern that, due to a childhood experience, she was not entirely certain: "I guess my worry would be that you know in this full swing of a trial, I don't know how I would feel later." *Id*. at 70. She went on, "in all fairness … everybody should know that, that I have that." *Id*. Defense counsel then asked whether Juror 57 would be "more likely to believe the little girl over anyone else who testifies," and Juror 57 said she would not: "I've also had firsthand experience with a child who wasn't honest about something like that so I've experienced both sides of that so that is the reason why I believe I could be impartial because I'm open to listen to both sides of that." *Id*. at 72. Once again, Petitioner did not exercise a peremptory challenge or move to remove Juror 57 for cause, nor did the trial court excuse her sua sponte.

MEMORANDUM DECISION AND ORDER - 15

C.        *State Court Decision on Claim 5*

On direct appeal, the Idaho Court of Appeals first held that Juror 34's statement that she could be fair and impartial if the case involved a close question showed that she was not biased. *State's Lodging B-4* at 4–5. Alternatively, the court went to hold that, even if Juror 34 was actually biased and should have been removed for cause, Petitioner had not shown that any juror who *actually* sat on the trial jury was biased. *Id*. at 5–6.

In doing so, the state appellate court first set forth the following standard for analyzing juror impartiality: "When a party uses one of it peremptory challenges to remove a juror it argues should have been removed for cause, the party must show on appeal that he was prejudiced by being required to use a peremptory challenge to remove the juror"—that is, a petitioner must show that a biased juror ultimately sat on the jury. *Id*. at 5. Though the court of appeals did not cite a federal case for this proposition, this standard is fully consistent with Supreme Court precedent evaluating juror-bias claims. *See Ross*, 487 U.S. at 86 ("Any claim that the jury was not impartial, therefore, must focus not on [the juror removed by the peremptory challenge], but on the jurors who ultimately sat.").

The Idaho Court of Appeals then found, as a factual matter, that Jurors 54 and 57 were impartial and unbiased. The court relied on both jurors' express statements that they could, indeed, put aside any biases and act as fair and impartial jurors:

> Jackson contends that Juror 54's statement that she "might"
> be swayed by her affiliation with the prosecutor created a bias
> against him. However, Juror 54 expressly indicated that she
> would be fair to Jackson despite her acquaintance with the

MEMORANDUM DECISION AND ORDER - 16

> prosecutor…. [T]he court is entitled to rely on assurances
> from venire persons concerning bias.
>
> …
>
> Jackson argues that Juror 57 was biased against him because
> she never backed away from her concern that she could not be
> impartial in the case. However, the record indicates that Juror
> 57 expressly stated, on two occasions, that she believed she
> could be impartial. Further, Juror 57 also unequivocally
> committed to waiting until all the evidence was presented
> before making any determinations. Therefore, Jackson is
> unable to show that Juror 57 was biased.

*Id*. at 5–6. Finding that no biased juror actually sat on Petitioner's jury, the state appellate

court denied Claim 5.

### D. The State Court's Rejection of Claim 5 Was Not Unreasonable under AEDPA, and the Claim Fails Even under De Novo Review

Claim 5—whether formulated in terms of (a) the trial court's denial of Petitioner's

motion to remove Juror 34 for cause, or (b) the trial court's failure, sua sponte, to excuse

Jurors 54 and 57 for cause—rests entirely on the proposition that Jurors 54 and 57 were

biased against Petitioner. This claim must be denied because, regardless of whether Juror

34 was biased, Jurors 54 and 57 were not.

After noting some equivocal reservations, both of these jurors expressly stated that

they could be impartial and could decide the case based only on the evidence introduced

at trial. The state court relied on this record evidence in finding that Jurors 54 and 57

were unbiased. Because this finding is supported by the record, it is entirely reasonable

under 28 U.S.C. § 2254(d)(2). *See Burt v. Titlow*, 571 U.S. 12, 15 (2013) (reversing

appellate court for improperly "refusing to credit a state court's reasonable factual finding

… where the record was silent"). Moreover, Petitioner has not rebutted the finding of impartiality by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Therefore, the Court is bound by it.

Because no biased juror ultimately sat on Petitioner's jury, Petitioner is not entitled to relief on Claim 5, under either 28 U.S.C. § 2254(d) or de novo review. *See Ross*, 487 U.S. at 88 (defendant's right to impartial jury is satisfied, even if improper denial of motion to excuse requires use of peremptory challenge, "[s]o long as the jury that sits is impartial.").

## 2. Under Either Deferential or De Novo Review, Petitioner Is Not Entitled to Habeas Relief on Claims 3, 2, or 1(a)

Petitioner's remaining claims assert ineffective assistance of counsel ("IAC"), based on trial counsel's representation with respect to the jury or the jury pool (Claims 3 and 2) and the pretrial investigation into the case (Claim 1(a)). Again, the Court addresses these claims in a logical, rather than a numeric, sequence.

### A. *Clearly Established Law*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel in his defense. The Supreme Court explained the standard for IAC claims in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id.*

at 687. A petitioner must establish both deficient performance and prejudice to prove an

IAC claim. *Id.* at 697. On habeas review, the court may consider either prong of the

*Strickland* test first, or it may address both prongs, even if one prong is not satisfied and

would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective

standard of reasonableness.  *Id.* at 687–88. A reviewing court's inquiry into the

reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly
> deferential. It is all too tempting for a defendant to second-
> guess counsel's assistance after conviction or adverse
> sentence, and it is all too easy for a court, examining
> counsel's defense after it has proved unsuccessful, to
> conclude that a particular act or omission of counsel was
> unreasonable. A fair assessment of attorney performance
> requires that every effort be made to eliminate the distorting
> effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court must
> indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption that,
> under the circumstances, the challenged action might be
> considered sound trial strategy. There are countless ways to
> provide effective assistance in any given case. Even the best
> criminal defense attorneys would not defend a particular
> client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions "are virtually unchallengeable" if "made after thorough

investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690.

Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690–91. That is, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Further, counsel is not deficient in an area where an investigation would not have been fruitful for the defense.

The Ninth Circuit has provided some insight into the *Strickland* standard when evaluating an attorney's "strategy calls." These cases are instructive in the Court's assessment of whether the state court reasonably applied *Strickland*. *See Duhaime*, 200 F.3d at 600. First, tactical decisions do not constitute IAC simply because, in retrospect, better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981). Third, "counsel's investigation must determine trial strategy, not the other way around." *Weeden v. Johnson*, 854 F.3d 1063, 1070 (9th Cir. 2017).

MEMORANDUM DECISION AND ORDER - 20

If a petitioner shows that counsel's performance was deficient, he must also show that the deficient performance caused prejudice. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695–96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). To demonstrate prejudice when an IAC claim is based on counsel's failure to file a particular motion, the petitioner must show a reasonable probability that had counsel

MEMORANDUM DECISION AND ORDER - 21

filed the motion, the motion would have been granted. *See Kimmelman v. Morrison*, 477
U.S. 365, 375 (1986) (IAC claim for failing to move to suppress evidence).

The foregoing standard, giving deference to counsel's decision-making, is the de
novo standard of review. Another layer of deference—to the state court decision—is
afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims
on habeas corpus review, the United States Supreme Court has explained:

> The pivotal question is whether the state court's application
> of the *Strickland* standard was unreasonable. This is different
> from asking whether defense counsel's performance fell
> below *Strickland*'s standard. Were that the inquiry, the
> analysis would be no different than if, for example, this Court
> were adjudicating a *Strickland* claim on direct review of a
> criminal conviction in a United States district court. Under
> AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), "an
> unreasonable application of federal law is different from an
> incorrect application of federal law." *Williams*, *supra*, at 410,
> 120 S. Ct. 1495. A state court must be granted a deference
> and latitude that are not in operation when the case involves
> review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when considering an IAC claim under § 2254(d), this
Court's review of that claim must be "doubly deferential." *Pinholster*, 563 U.S. at 190
(internal quotation marks omitted).

### B.    *Petitioner Is Not Entitled to Relief on Claim 3*

Claim 3 asserts IAC for (a) failing to preserve for appeal the claim that Juror 34
was biased, and (b) failing to move to excuse Jurors 54 and 57 for cause. The factual
basis of Claim 3 is the same as Claim 5 and involves the jurors' state of mind.

As explained above, a petitioner alleging a violation of the right to an impartial juror must prove that a juror was biased—meaning that the juror could not "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723. Therefore, to prevail on either sub-claim in Claim 3, Petitioner must show both that trial counsel unreasonably failed to remove a juror who ended up sitting on the jury (the deficient performance prong of *Strickland*), and that the juror was actually biased (the prejudice prong of *Strickland*). *See Ross*, 487 U.S. at 88.

The Idaho Court of Appeals addressed Claim 3 in Petitioner's post-conviction appeal. That court rejected the claim that counsel rendered ineffective assistance, as to the alleged juror bias, by concluding that the issue had already been decided against Petitioner on direct appeal:

> The opinion in the underlying direct appeal addressed the issue of prejudice on the merits. In that opinion, this Court held that *Jackson failed to show that Juror 54 and Juror 57— the two jurors he claimed he would have used his peremptory challenge on—were biased. Jackson,* Docket No. 39234. This Court, relying on the transcript from voir dire, explained that *Juror 54 "indicated that she would be fair to Jackson despite her acquaintance with the prosecutor" and that Juror 57 "expressly stated, on two occasions, that she believed she could be impartial." Id.* Because Jackson's amended petition for post-conviction relief was not accompanied by new evidence related to this issue, the district court was precluded from reaching a different conclusion.

*State's Lodging D-9* at 9–10 (emphasis added).

The state appellate court analyzed Claim 3 primarily under the rubric of res judicata or issue preclusion, but its analysis also included a determination that Petitioner had failed to establish *Strickland* prejudice:

MEMORANDUM DECISION AND ORDER - 23

> When a petitioner attempts to reframe an issue raised on direct appeal as an ineffective assistance of counsel claim and the underlying alleged error was held not sufficiently prejudicial to rise to the level of a due process violation on direct appeal, *failure to object to the alleged error cannot constitute ineffective assistance because a showing of prejudice is required to prove ineffective assistance of counsel. See Severson v. State*, 159 Idaho 517, 521-22, 363 P.3d 358, 362-63 (2015) (explaining that a holding of no fundamental error on direct appeal precluded consideration of the same issue framed as ineffective assistance of counsel because the defendant could not show prejudice under *Strickland*).

*State's Lodging D-9* at 9–10 (emphasis added).

This Court comes to the same conclusion and will deny Claim 3. As an initial matter, Claim 3(a) fails because it is based on a false premise. Trial counsel did, in fact, preserve Claim 5 for appellate review. On direct appeal, the Idaho Court of Appeals carefully considered the claim that Juror 34 was biased and should have been removed for cause. *See State's Lodging B-4*.

Moreover, as explained previously, the state court rejected Claim 5 because Petitioner did not establish that a biased juror actually sat on the trial jury. This factual finding and reasoning are dispositive of Claim 3 as well.

The state court found that Jurors 54 and 57 were impartial and unbiased, and Petitioner has not rebutted this finding by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Therefore, it is not reasonably probable that any motion to remove these jurors for cause would have been granted. *See Kimmelman*, 477 U.S. at 375. Because no juror who ultimately sat on the trial jury was biased and because any motion to remove them would have been denied, Petitioner necessarily cannot show *Strickland* prejudice

from counsel's failure to file such a motion. Thus, under either deferential or de novo review, the Court must deny Claim 3.

### C.      *Petitioner Is Not Entitled to Relief on Claim 2*

In Claim 2, Petitioner asserts that trial counsel was ineffective for failing to move for a change of venue. To resolve Claim 2, the Court must consider not only the law governing IAC claims, but also the law governing the subject of the alleged deficient performance—here, the standard for changes of venue due to pretrial publicity.

A criminal defendant's right to a fair trial is an essential part of our system of justice, *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 551–55 (1976), and trial courts have a duty to ensure that media coverage does not affect the fairness of the proceeding, *Sheppard v. Maxwell*, 384 U.S. 333, 362–63 (1966). Where a claim of juror bias stems from frequent and in depth prejudicial pretrial publicity, a change of venue may be required to satisfy the constitutional right to an impartial jury. *Groppi v. Wisconsin*, 400 U.S. 505, 510–11 (1971) ("'[I]t was a denial of due process of law to refuse the request for a change of venue, after the people of Calcasieu Parish had been exposed repeatedly and in depth' to the prejudicial pretrial publicity…. [U]nder the Constitution a defendant must be given an opportunity to show that a change of venue is required in his case.") (quoting *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963). However, without "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality," a reviewing court may not assume that the jury pool has been irrevocably tainted. *Murphy*, 421 U.S. at 800; *see also id.* ("The voir dire in this case indicates no such hostility to petitioner by the jurors who served in his trial as to suggest a partiality

that could not be laid aside. Some of the jurors had a vague recollection of the robbery with which petitioner was charged and each had some knowledge of petitioner's past crimes, but none betrayed any belief in the relevance of petitioner's past to the present case.") (footnote omitted).

According to Petitioner, trial counsel "was well aware of the media reports that damaged the character of [Petitioner]," but "failed to protect [Petitioner] from prejudice as articles in the local paper made improper statements of prior uncharged alleged bad acts." Petitioner informed counsel that he wanted a change of venue, but counsel did not file a motion to that effect. *Id*. at 52.

With respect to Claim 2, the state court of appeals set forth the following legal standards:

> A trial court's decision on a motion to change venue is discretionary in nature. *State v. Gray*, 129 Idaho 784, 800, 932 P.2d 907, 923 (Ct. App. 1997). Error in regard to a trial court's denial of a motion for change of venue cannot be predicated on the mere existence of pretrial publicity concerning a criminal case. *Id*. Instead, the validity of a court's decision to try a case in a particular venue is tested by whether, in a totality of existing circumstances, juror exposure to pretrial publicity resulted in a trial that was not fundamentally fair. *State v. Hyde*, 127 Idaho 140, 145, 898 P.2d 71, 76 (Ct. App. 1995). Factors to be considered in determining whether the defendant has received a fair trial, and thus whether denying the motion for change of venue was an abuse of discretion, include: an affidavit indicating a prejudice in the community; testimony at voir dire as to whether any juror had formed an opinion of the defendant's guilt; whether the defendant challenged for cause any of the jurors finally selected; the nature and content of the pretrial publicity; the length of time elapsed between the pretrial publicity and the trial; and any assurance given by the jurors

> themselves concerning their impartiality. *Gray*, 129 Idaho at
> 800, 932 P.2d at 923. It further has been held that the issue of
> whether a change of venue should be requested is a matter of
> trial strategy and tactical choice, not subject to review as a
> claim of ineffective assistance of counsel in the absence of
> proof of inadequate preparation or ignorance on counsel's
> part. *Grant v. State*, 156 Idaho 598, 606, 329 P.3d 380, 388
> (Ct. App. 2014).

*Id*. at 8.

Applying these standards—which are not inconsistent with Supreme Court

jurisprudence—the Idaho Court of Appeals rejected Claim 2. That court found no

evidence suggesting that counsel's failure to move for a change of venue was anything

other than a reasonable strategic decision and held that, in any case, a motion to change

venue likely would have been denied:

> We begin by noting that Jackson never asserted that his
> attorney failed to move for a change of venue due to
> inadequate preparation or ignorance. Moreover, without
> having the underlying record available for review on appeal,
> we lack evidence regarding testimony at voir dire as to
> whether any juror had formed an opinion of the defendant's
> guilt; whether the defendant challenged for cause any of the
> jurors finally selected; the nature and content of the pretrial
> publicity; the length of time elapsed between the pretrial
> publicity and the trial; and any assurance given by the jurors
> themselves concerning their impartiality. *Gray*, 129 Idaho at
> 800, 932 P.2d at 923. *Relying solely on the information
> included in Jackson's amended affidavit, as that is the only
> evidence we have been provided, it is unlikely that a motion
> to change venue would have been successful. See
> generally State v. Hadden*, 152 Idaho 371, 271 P.3d 1227 (Ct.
> App. 2012) (providing a survey of cases elucidating how
> difficult it is for a defendant to establish a presumption of
> prejudice that would require a change of venue). Therefore, it
> *may very well have been a tactical decision to not file a
> motion for change of venue*. Because the only evidence
> provided, located in Jackson's affidavit of facts, is Jackson's

> assertion that his attorney knew Jackson wanted a change of
> venue and knew of the negative media reports that the jurors
> were possibly exposed to, *Jackson has failed to plead a prima
> facie case that the decision to not move for a change of venue
> constituted deficient performance and that it was not tactical*.

*Id*. at 8–9 (emphasis added). This Court agrees.

Petitioner simply has not rebutted the strong presumption that trial counsel's
failure to request a change of venue was a strategic decision falling well "within the wide
range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Petitioner offers
no evidence whatsoever about the nature of the pretrial publicity; nor has he established
that any juror was aware of anything inflammatory because of that publicity, let alone
whether any such publicity could have resulted in a biased jury. *See, e.g., Crater v.
Galaza*, 491 F.3d 1119, 1132–33 (9th Cir. 2007) ("[T]he vast majority of the members of
the panel of prospective jurors indicated that they had been exposed to publicity
concerning the case and eight of the twelve jurors originally seated to hear the case
expressly stated that they had been exposed to publicity concerning the case. *While this
evidence shows that publicity reached many persons in the community, we disagree that
it supports a change of venue as a matter of federal constitutional law*.") (emphasis
added) (internal quotation marks and alteration omitted); *Casey v. Moore*, 386 F.3d 896,
908–09 (9th Cir. 2004) (denial of change of venue was reasonable because "the
'publicity' about the case in the local newspaper and on the radio station was not
inflammatory and was largely factual in nature.").

The Court also has independently searched the record and found no such evidence.
In fact, during jury selection, the trial court *excused* potential jurors who reported seeing

MEMORANDUM DECISION AND ORDER - 28

media coverage of the crime and who stated that, as a result, they could not be fair and impartial. *State's Lodging A-2* at 15–20, 67–68. As a result, Petitioner cannot show prejudice from counsel's failure to request a change of venue.

Finally, as discussed above, the state court made a reasonable factual finding that Jurors 54 and 57 were impartial, and Petitioner does not challenge the impartiality of any other individual juror. Because the jury was unbiased and any potential jurors with biases from media were excused, it is not reasonably probable that the trial court would have granted a motion to change venue if counsel had filed one. *See Kimmelman*, 477 U.S. at 375. Accordingly, Claim 2 fails under AEDPA or de novo review.

### D.     Petitioner Is Not Entitled to Relief on Claim 1(a)

In Claim 1(a), Petitioner asserts IAC based on counsel's alleged failure to conduct an adequate pretrial investigation into the victim's credibility. Petitioner has alleged that he asked counsel about "who would be there to represent [Petitioner] if for some reason counsel would not be around to do so." *State's Lodging C-1* at 51. Counsel purportedly "took this question in a negative manner, and from that point on was very negative and unresponsive to the Petitioner's inquiries." *Id*. Petitioner has stated that counsel was also "well aware" that "the investigator had used opinion and leading questions in order to coerce [the victim] into making statements and provid[ing] evidence more in line with the investigators [sic] theory of the case." *Id*. at 51–52. Petitioner relies on these facts to argue that counsel did not reasonably investigate the victim's credibility.

MEMORANDUM DECISION AND ORDER - 29

The state court of appeals rejected Claim 1(a) because "the only evidence provided" by Petitioner did not establish that trial counsel performed deficiently or, for that matter, that Petitioner suffered prejudice from counsel's performance:

> [Petitioner has offered] the conclusory statement that counsel "was very negative and unresponsive to Petitioner's inquiries" and the bare assertion that counsel "was well aware of the recorded evidence of the investigator and [the victim]," meaning that if counsel had "reviewed said evidence it would have been determined that the investigator had used opinion and leading questions in order to coerce [the victim] into making statements and provide evidence more in line with the investigators theory of the case." Because these conclusory statements are the only evidence provided, we are unable to hold that the district court erred in determining that *the record was devoid of evidence supporting Jackson's claims of ineffective assistance of counsel for failure to investigate*. Furthermore, *Jackson never explained how his counsel's alleged failure to investigate made a difference* in the proceedings, which is a requirement for failure to investigate claims, as it is not sufficient merely to allege that counsel may have discovered a weakness in the State's case. *Accordingly, Jackson has failed to plead a prima facie case that his counsel's alleged failure to investigate constituted deficient performance and that he was prejudiced by the alleged failure*.

*State's Lodging D-9* at 6–7 (emphasis added) (citation omitted).

Like the proceedings in the Idaho Court of Appeals, in this Court Petitioner still has offered nothing more than conclusory allegations about counsel's alleged deficient performance. Petitioner has stated only that counsel was negative toward him and knew detectives had used allegedly improper interview techniques. Speculative allegations about how counsel may have felt about Petitioner and vague statements about interview

MEMORANDUM DECISION AND ORDER - 30

tactics are not evidence that counsel failed to adequately investigate the victim's credibility.

The record shows that trial counsel worked hard to convince the jury that the victim was not credible. Counsel specifically pursued the theory that the victim initially lied about the abuse and, later, could not change that story because (1) in her household, honesty was the most important thing, and (2) if the family found out she had lied about the molestation, she would be physically punished.

This avoiding-punishment theory was a reasonable choice of defense, and counsel elicited evidence from numerous witnesses that the victim's stepfather had made a special paddle for the victim because she had lied in the past. *See State's Lodging A-2* at 176–77, 209–10, 220. Petitioner's tenuous conjecture, offered as the basis for counsel's decision-making, does not overcome the presumption that defense counsel made objectively reasonable decisions after adequate investigation.

Nor has Petitioner established prejudice as required by *Strickland*. Because counsel thoroughly explored the victim's credibility at trial and presented the jury with evidence that called her credibility into question, Petitioner has not shown a reasonable probability that any additional investigation, in whatever form it might have taken, would have changed the outcome of the trial. Thus, even if trial counsel had performed deficiently, Petitioner cannot show prejudice as to Claim 1(a).

## CONCLUSION

For the foregoing reasons, and under deferential or de novo review, Petitioner is not entitled to habeas relief on the merits on his remaining claims.

## ORDER

**IT IS ORDERED:**

1. Claims 1(a), 2, 3, and 5, as set forth in the Petition (Dkt. 3), are DENIED. Because Petitioner's remaining claims have already been dismissed, this entire action is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED:  August 24, 2021

Honorable Raymond E. Patricco
United States Magistrate Judge